# CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY
## v.
# JOHN H. STAMPS.

*Railroads—Highway Crossing—Personal Injuries—Defective Seat—Evidence.*

In an action against a railroad company to recover damages for personal injuries received by the plaintiff when crossing the defendant's track at a highway crossing, it is *held:* That the evidence is not sufficient to warrant the verdict for the plaintiff; and that it seems more reasonable to attribute the accident to the defective seat of the plaintiff's wagon than to the fact that the approach was too narrow.

[Opinion filed November 18, 1887.]

APPEAL from the Circuit Court of Jersey County; the Hon. G. W. HERDMAN, Judge, presiding.

Messrs. SWEENEY & WALKER and O. F. PRICE, for appellant.

Messrs. GOODRICH & FERNS, for appellee.

CONGER, P. J.    This is an action by appellee against appellant to recover damages for injuries received by him when crossing appellant's railroad track at a highway crossing.

Appellee was crossing the railway on the public highway in an open spring wagon drawn by one horse, and having passed over the track and started down the grade of the approach, his horse became frightened at a fire on the south side of the highway, and ran a distance of about one hundred feet, when appellee was thrown out of his wagon to the ground, receiving the injuries complained of.

Appellee was alone, and his statement of the manner in which the accident occurred is, that as he was crossing the track the horse did not want to go forward on account of the fire at the side of the road, and finally stopped on the track;

that he started the horse again, and just as the hind wheels of his wagon passed the railroad track, the horse became frightened and jumped to the north side of the approach across or into a hole, and after that he remembered nothing that occurred.

Mr. Marriweather passing along ,shortly afterward, found appellee lying in the highway in the center of the wagon track and about one hundred feet from the railroad track. He was entirely unconscious, lying upon his face, with his head to the east, or away from the railroad track. After working with appellee for a time appellee gradually regained consciousness, and by Mr. Marriweather was taken to Rockbridge, a distance of one and a half to two miles.

This witness was the only one who saw appellee while lying in the road and the only one who at that time examined the track made by appellee's wagon to determine its course from the railroad track to the place where appellee was found.

He says that he did not leave appellee, but as he stood by him he looked to see if he could see why appellee was there; that he noticed the tracks of the wagon from where he stood by appellee back to the crossing; that they continued down from the crossing to where he stood; that they remained in the line of the road, about the middle of the road, about one half way down the grade, when they took a short turn to the right, he thought about two feet, then turned back and kept a straight line down to him. The left wheel kept the line of the highway, the right over the side on,the grass a little.

Mr. Yost examined the ground in the evening after appellee had been removed and he says he saw where the wheels of some wagon had run alongside of the bank for probably fifteen or twenty feet from the railroad; the off wheel got over nearly in the center of the road, and the other wheel went over the north side and then back again.

The seat of appellee's wagon was found in the road a few feet beyond where appellee was lying. It was not fastened to the wagon, and its construction and manner of resting on the wagon is shown by the evidence of Mr. Gunnell, who says: "The buggy bed is five and a half inches deep; I measured

the distance from the top of the cleat to the edge of the buggy; it was three-eighths of an inch. I examined riser; it is eight inches, less the three-eighths of an inch I spoke of; the riser on the left side was different from the riser on the right side; it (on the left side) was made out of a two-inch piece of oak plank, and being so much wider, in order to have it rest down on the cleat, it was necessary to bevel off from the outside in order to get it down on the cleat; I had a model made; (witness produces model and says) this (the long piece) is the side of the buggy bed; it is just five and a half inches in depth; the cleat is three-eighths of an inch from the top; that riser was made out of a two-inch plank; if it was left square it wouldn't go down in, and so the outside had been beveled off so as to rest down on the cleat; the riser would be seven inches and five-eighths high; this piece (riser of the model) we never measured; don't know just exactly how high it is; this riser is on the left side; the other is different; seat is not fastened; the top edge of the buggy bed is worn off fully as much as this (indicating on model); there was no iron on top of buggy bed and it is worn off until it is round on top." The evidence in reference to the width of the approach is quite conflicting, some of the witnesses making it twelve feet in the narrowest place while others place it at nine.

When it is considered that the riser or brace of the left end of the seat was beveled or rounded off to make it fit in between the sides of the wagon bed, that it rested upon a cleat only three-eighths of an inch below the top of the bed, which itself had been worn round, with no fastenings to keep it in the wagon, it seems much more reasonable to attribute the accident to such defective seat than to the fact that the approach was too narrow.

Whether appellee was mistaken or not as to the horse jumping into or across the hole just after crossing the track, it is reasonably clear from the evidence that the wagon was not overturned at that place, nor was appellee thrown out upon that side of the road. But after the wagon had gotten back into the road and far enough away from the railroad track to be entirely off of the approach, both the seat and appellee were

thrown out upon the south, or left side of the wagon. Appellee's attention had previously been called to the condition of the seat and he had been told it was dangerous to leave it in that condition.

We think the evidence was not sufficient to warrant the verdict of the jury and that there should have been a new trial awarded. The judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*